**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA ex rel.
MIKE D. HENIG AND HENIG FURS, INC.,

                Plaintiffs-Relators,

                v.

AMAZON.COM, INC.; AMAZON.COM
SERVICES, LLC

                Defendants.

Case No. 1:19-cv-05673-ER

Hon. Edgardo Ramos

---

**Plaintiffs-Relators' Memorandum in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ............................................................................................................2

I.      PROCEDURAL HISTORY ......................................................................................2

II.     THE SECOND AMENDED COMPLAINT'S ALLEGATIONS .......................................3

LEGAL STANDARD ......................................................................................................5

ARGUMENT .................................................................................................................6

I.      THE SAC PLAUSIBLY ALLEGES THAT AMAZON KNOWINGLY CAUSED
ITS CO-CONSPIRATORS TO MAKE AND USE FALSE RECORDS
MATERIAL TO AN OBLIGATION TO THE UNITED STATES...................................6

      A.     The SAC Plausibly Alleges that Amazon Caused the Use of False Records .........6

      B.     The SAC Plausibly Alleges that Amazon Knew That the Records Were
False or Acted With Deliberate Ignorance or Reckless Disregard to their
Falsity .................................................................................................9

           1.     The SAC Plausibly Alleges Circumstantial Evidence of Actual
Knowledge.................................................................................9

           2.     The SAC Plausibly Alleges that Defendants Acted with Deliberate
Ignorance and Reckless Disregard for the Truth.........................................11

      C.     The SAC Satisfies the Particularity Requirements of Rule 9(b) ...........................14

III.    THE SAC PLAUSIBLY ALLEGES THAT AMAZON KNOWINGLY AND
IMPROPERLY AVOIDS OR DECREASES AN OBLIGATION TO PAY
MONEY TO THE UNITED STATES ................................................................15

IV.   THE SAC PLAUSIBLY ALLEGES THAT AMAZON CONSPIRED WITH ITS
CO-CONSPIRATORS................................................................................18

V.    AMAZON'S ARGUMENT IN A FOOTNOTE REGARDING THE STATUTE
OF LIMITATIONS SHOULD BE REJECTED ...................................................20

CONCLUSION.............................................................................................................21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 5, 6

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ......................................................................................................... 5

*Financial Guar. Ins. Co. v. Putnam Advisory Co.*,
    783 F.3d 395 (2d Cir. 2015) ........................................................................................ 10

*Godecke v. Kinetic Concepts, Inc.*,
    937 F.3d 1201 (9th Cir. 2019) ..................................................................................... 14

*Griffin v. Carnes*,
    72 F.4th 16 (2d Cir. 2023) ........................................................................................... 20

*IKB Int'l S.A. v. Bank of Am. Corp.*,
    584 F. App'x 26 (2d Cir. 2014) ................................................................................... 10

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ........................................................................................ 10

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ........................................................................................ 15

*Steinbeck v. Steinbeck Heritage Found.*,
    400 F.App'x 572 (2d Cir. 2010) .................................................................................. 20

*U.S. ex rel. Ellsworth Assoc., LLP v. CVS Health Corp.*,
    660 F. Supp. 3d 381 (E.D. Pa. 2023) ............................................................................ 7

*U.S. ex rel. Long v. SCS Bus. & Tech. Inst.*,
    999 F.Supp. 78 (D.D.C. 1998) ...................................................................................... 8

*U.S. ex rel. Schieber v. Holy Redeemer Healthcare System, Inc.*,
    No. CV 19-12675, 2024 WL 1928357 (D.N.J. Apr. 30, 2024) ..................................... 7

*U.S. ex rel. Schmidt v. Zimmer, Inc.*,
    386 F.3d 235 (3d Cir. 2004) ...................................................................................... 6, 7

*U.S. ex rel. Taylor v. GMI USA Corp.*,
  No. 16-CV-7216 (RWL), 2024 WL 307791 (S.D.N.Y. Jan. 26, 2024) ........................ 8, 16, 20

*U.S. ex rel. Tran v. Computer Scis. Corp.*,
  53 F. Supp. 3d 104 (D.D.C. 2014) .................................................................................... 7

*U.S. v. Pres. and Fellows of Harvard College*,
  323 F. Supp. 2d 151 (D. Mass. 2004) ............................................................................... 8

*United States ex rel. Bahrani v. Conagra, Inc.*,
  465 F.3d 1189 (10th Cir. 2006) ........................................................................................ 2

*United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*,
  865 F.3d 71 (2d Cir. 2017) ......................................................................................... 14, 15

*United States ex rel. Donohue v. Carranza*,
  1:20-cv-05396, 2023 WL 2414166 (S.D.N.Y. Jan. 14, 2023) ...................................... 18

*United States ex rel. Garbe v. Kmart Corp.*,
  73 F. Supp. 3d 1002 (S.D. Ill. 2014) .............................................................................. 16

*United States ex rel. Grabcheski v. Am. Int'l Grp., Inc.*,
  No. 10 CIV. 03902 (GBD), 2016 WL 9083376 (S.D.N.Y. Mar. 31, 2016) ................... 9

*United States ex rel. Hussain v. CDM Smith, Inc.*,
  No. 14-CV-9107 (JPO), 2017 WL 4326523 (S.D.N.Y. Sept. 27, 2017) ...................... 17

*United States ex rel. Kester v. Novartis Pharms. Corp.*,
  No. 11 CIV. 8196 CM, 2014 WL 2619014 (S.D.N.Y. June 10, 2014) ........................ 9, 19

*United States ex rel. Pervez v. Beth Israel Med. Ctr.*,
  736 F. Supp. 2d 804 (S.D.N.Y. 2010) ............................................................................ 10

*United States ex rel. Schutte v. SuperValu Inc.*,
  598 U.S. 739 (2023) .................................................................................................... 11, 12

*United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*,
  674 F. App'x 92 (2d Cir. 2017) ...................................................................................... 15

*United States ex rel. Takemoto v. The Hartford Fin. Servs. Grp., Inc.*,
  157 F. Supp. 3d 273 (W.D.N.Y. 2016) ........................................................................... 15

*United States ex rel. Wallace v. Exactech, Inc.*,
  No. 2:18-CV-01010-LSC, 2020 WL 4500493 (N.D. Ala. Aug. 5, 2020) .................... 16

*United States ex rel. Williams v. Renal Care Grp., Inc.*,
  696 F.3d 518 (6th Cir. 2012) .......................................................................................... 13

iii

*United States ex rel. Wood v. Applied Rsch. Assocs., Inc.*,
   No. 07 CV 3314 (GBD), 2008 WL 2566728 (S.D.N.Y. June 26, 2008) ................................ 17

*United States ex rel. Yannacopoulos v. General Dynamics*,
   652 F.3d 818 (7th Cir. 2011) ................................................................................................ 15

*United States v. Caremark, Inc.*,
   634 F.3d 808 (5th Cir. 2011) ................................................................................................ 16

*United States v. King-Vassel*,
   728 F.3d 707 (7th Cir. 2013) ................................................................................................ 12

*United States v. Krizek*,
   111 F.3d 934 (D.C. Cir. 1997) .............................................................................................. 13

*United States v. Neifert–White Co.*,
   390 U.S. 228 (1968) ................................................................................................................ 2

*United States v. Raymond & Whitcomb Co.*,
   53 F. Supp. 2d 436 (S.D.N.Y. 1999) .................................................................................... 13

*United States v. Svoboda*,
   347 F.3d 471 (2d Cir. 2003) ................................................................................................. 19

*United States v. The Health Alliance of Greater Cincinnati*,
   No. 1:03-CV-00167, 2008 WL 5282139 (S.D. Ohio Dec. 18, 2008) ...................................... 17

## Statutes /Rules

31 U.S.C. § 3729(a)(1)(G) ............................................................................................... 6, 15, 16

31 U.S.C. § 3729(b)(1) ............................................................................................................... 11

31 U.S.C. § 3729(b)(1)(A) ........................................................................................................... 9

31 U.S.C. § 3729(b)(3) ............................................................................................................... 16

Fed. R. Civ. P. 9(b) ......................................................................................................... 9, 10, 14, 15

## Other Authorities

Black's Law Dictionary 540–41 (9th ed. 2009) ......................................................................... 12

S.Rep. No. 99–345 ...................................................................................................................... 12

Relators Mike D. Henig and Henig Furs, Inc. (collectively "Henig") respectfully submit this Memorandum of Law in Opposition to Defendants Amazon.com, Inc. and Amazon.com Services LLC's (collectively "Amazon") Motion to Dismiss the Second Amended Complaint. ECF No. 71.  For the following reasons, the Court should deny Amazon's motion in its entirety.

## PRELIMINARY STATEMENT

Amazon is one of the largest and most sophisticated companies in the United States and the world.  Among its many services, it markets, receives, sells, delivers, collects payments for, and remits payments for products from third parties to U.S. customers.  These products include furs from manufacturers and distributors in China who systematically create and use fraudulent documents to avoid paying fees and tariffs to the United States when they import them into the country.  The paper trail accompanying these products on their journey through Amazon's hands is replete with indicia of this fraud: falsified forms, impossible pricing, missing inspections, and more.  But instead of refusing to be a party to the fraud, Amazon dives in and facilitates it: marketing the fraudulently imported furs, selling them to U.S. customers, collecting money for them, delivering them and paying the distributors and manufacturers their share of the proceeds. Amazon actively participates in, enables and thus perpetuates the cycle of fraudulent importation, sale, and profit that it and its co-conspirators have been engaging in for many years.

Faced with these plain and straightforward allegations, Defendants attempt to avoid liability for their facilitation of a years-long pattern of evading FWS fees and Customs tariffs by mischaracterizing and/or rewriting the Complaint's allegations and by seeking to narrow the False Claims Act in a manner that is not supported by either the text of that statute or the hundreds of cases interpreting it.  Thus, despite statutory text that imposes liability for avoiding "*an* obligation" to pay money to the United States, Amazon argues it cannot be liable because it did not avoid *its* obligation to pay money to the United States.  And despite the False Claims Act defining the

requisite scienter as reckless disregard of the truth or falsity of "information," Amazon argues it cannot be held liable because it did not manifest reckless disregard for the truth of ***its own*** statements and information. Such unjustified narrowing constructions are not only unsupported by any case law but also "inconsistent with the broad remedial purpose of the False Claims Act." *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1202 (10th Cir. 2006) (citing *United States v. Neifert–White Co.*, 390 U.S. 228, 233 (1968)).

Amazon's other arguments are equally unavailing. The Second Amended Complaint ("SAC") alleges, with particularity, who creates and uses the false documents, when they create and use them, what false documents are created and how they are false. It also alleges detailed facts that establish the circumstances of Amazon's knowledge of and reckless disregard for the falsity of the fraudulent claims that accompanied the import of the furs it sells. Because these allegations plausibly assert that Amazon has systematically violated the False Claims Act by causing the creation and use of false records so that it and its conspirators can continue to profit from the fraudulent import of furs, and for the reasons elaborated in detail in this memorandum, Amazon's motion to dismiss should be denied.

## BACKGROUND

### I.    PROCEDURAL HISTORY

Relators originally filed this *qui tam* False Claims Act case under seal on June 30, 2017 in the District of South Carolina. *See* ECF No. 19. On June 18, 2019, the District of South Carolina transferred the case, still under seal, to this Court. *Id.* On September 8, 2023, the United States filed notice of its decision not to intervene, ECF No. 26, and the Court ordered that the case be unsealed on October 8, 2023, ECF No. 22.

On November 9, 2023, Relators filed a First Amended Complaint ("FAC"). ECF No. 37. The FAC was 59 pages long and asserted two causes of action for reverse false claims and

conspiracy to violate the False Claims Act that incorporated a number of legal theories, including that Defendants were acting as the de facto importer of record of the goods at issue. *See, e.g.*, *id.* ¶¶ 6, 124-45. The FAC also included 58 exhibits. ECF Nos. 37-1 to 37-58.

With the consent of Defendants and in order "to streamline and clarify the issues in dispute," ECF No. 61 at 1, Relators moved for leave to file a Second Amended Complaint, which this Court granted on February 15, 2024. ECF No. 62. On April 1, 2024, Relators filed the SAC, which is 17 pages long and includes no exhibits.[1] ECF No. 63. Among other streamlining and clarifying changes, the SAC omitted certain legal theories advanced in the FAC, including that Defendants were the de facto importer of record of the relevant goods. *See id.*

## II.    THE SECOND AMENDED COMPLAINT'S ALLEGATIONS

The SAC alleges—and the Court must accept as true for the purposes of resolving Defendants' motion—that for a period of at least 15 years, Defendants, in coordination with certain China-based manufacturers and distributors of fur products (Amazon's "Co-Conspirators"), have been systematically facilitating the creation and use of false U.S. Customs and Border Protection ("CBP") declarations and U.S. Fish and Wildlife Service ("FWS") forms to fraudulently decrease duties, tariffs, and inspection fees owed to the United States. *Id.* ¶¶ 1-3.

The Co-Conspirators are Chinese companies that manufacture and distribute fur products, including into the United States. *Id.* ¶ 10. Among other methods, they distribute their furs into the United States through Amazon. That is, Amazon marketed the furs on its website, sold the furs to U.S. customers through that website, received the furs into its warehouses, packaged and

---

[1] Defendants' argument that Relators omitted exhibits from the SAC to avoid dismissal misses the mark. *See* Mot. at 10-11. The exhibits Defendants cite, and the arguments based on them, relate to Relators' abandoned importer-in-fact theories and are not relevant to the claims the SAC alleges.

shipped the furs to U.S. customers, collected payments for the furs from U.S. customers, remitted those payments (less Amazon's fees) to the Co-Conspirators, monitored communications between the customers and the Co-Conspirators, and processed returns of those furs when requested by customers. *Id.* ¶¶ 46, 60-61.

When the Co-Conspirators imported the fur products into the United States, they used two categories of false records and statements to fraudulently decrease the amount of money they owed to the government as part of that importation. First, U.S. law requires that importers of animal products, including furs, complete FWS Form 3-177 for each imported shipment. *Id.* ¶¶ 17-19. Among other functions, this Form signals to the FWS that the product must be inspected, for which the importer must pay an inspection fee. *Id.* ¶ 20. Amazon's Co-Conspirators failed to complete this form, thereby avoiding the payment of the inspection fee required for the importation of furs. *Id.* ¶¶ 35-39. As a further means of avoiding the payment of this fee, the Co-Conspirators also shipped the fur products through ports of entry that were not authorized for the import of animal products, including furs, because they lacked FWS inspection facilities. *Id.* ¶¶ 16, 36.

Second, U.S. law also requires that all imports be accompanied by a Customs Declaration that states the type and value of the goods. *Id.* ¶ 29. Based on the information on the Customs Declaration, CBP determines the appropriate tariff rate, and the importer must pay a duty based on that rate and the value of the goods to the United States in order to import the goods into the country. *Id.* ¶¶ 30-31. The Co-Conspirators created and used false Customs Declarations to fraudulently reduce the amount of duty owed for the import. *Id.* ¶¶ 40-44. Specifically, the Co-Conspirators falsely stated that the furs were other products, such as polyester or children's clothing, to fraudulently reduce the tariff rate assessed, *id.* ¶ 41, and falsely undervalued the goods to fraudulently reduce the total amount of tariff assessed, *id.* ¶ 43.

Amazon knew of and/or actively turned a blind eye to its Co-Conspirators' fraudulent acts. *Id.* ¶¶ 45-65.    Amazon received invoices which stated prices for the fur products that Amazon— a sophisticated commercial actor and one of the largest companies in the United States and in the world—knew or should have known were not commercially reasonable if the Co-Conspirators had paid the legally required inspection fees and tariffs for the import of the furs.  *Id.* ¶ 49. Amazon also received packages without FWS Form 3-177.  *Id.* ¶ 51.  That was a red flag signaling that the furs were not imported through a FWS-approved port, had not been subjected to the mandatory FWS inspection, and that the importers had not paid the required FWS inspection fee.  *Id.* ¶ 52. Amazon also received packages with packing slips that indicated ports of entry other than FWS-approved ports, providing further notice that the FWS inspection fees had been evaded.  *Id.* ¶¶ 54-55.  And Amazon received the packages accompanied by Customs Declarations that falsely stated the contents were other products, with lower reported values.  *Id.* ¶¶ 56-57.

Despite being on notice that the Co-Conspirators had fraudulently omitted the FWS Form and created and used fraudulent Customs Declarations, Amazon nonetheless received, stored, sold and delivered the furs and collected payment from customers and remitted payment to the Co-Conspirators for the furs.  *Id.* ¶ 60.  In so doing, Amazon encouraged and caused the Co-Conspirators to continuing importing furs into the United States using false records to avoid obligations to the United States.  *Id.* ¶¶ 62-63.  The Co-Conspirators and Defendants continued this cycle for at least fifteen years, during which both Defendants and the Co-Conspirators profited significantly from the fraudulent conduct.  *Id.* ¶ 65.

## LEGAL STANDARD

When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A plaintiff need only plead "enough facts to

state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint only must include sufficient "factual content," accepted as true and with all inferences drawn in the plaintiff's favor, to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

### I.     THE SAC PLAUSIBLY ALLEGES THAT AMAZON KNOWINGLY CAUSED ITS CO-CONSPIRATORS TO MAKE AND USE FALSE RECORDS MATERIAL TO AN OBLIGATION TO THE UNITED STATES

The False Claims Act, among other things, imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). The SAC plausibly alleges that Defendants knowingly caused their Co-Conspirators to make and use false records and statements material to an obligation to pay FWS inspection fees and Customs tariffs to the United States. Each of Defendants' arguments against the plausibility and adequacy of these allegations fails, and their motion should be denied.

### A.     The SAC Plausibly Alleges that Amazon Caused the Use of False Records

Defendants first argue that the SAC does not adequately allege that Amazon acted to cause false records to be made or used. *See* Mot. at 12-16. Defendants' arguments, however, misstate the law regarding causation, and ignore the plain allegations of the SAC.

As an initial matter, Defendants misapprehend how courts interpret and apply the causation requirement of the False Claims Act. Courts apply "ordinary causation principles from negligence law in determining responsibility under the FCA." *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 244 (3d Cir. 2004). Although courts sometimes use the "substantial factor" language quoted by Defendants, Mot. at 14, the case law itself makes clear—consistent with longstanding causation

principles of tort law—that causation is satisfied under a "substantial factor" standard simply if the false claim is a reasonably foreseeable or otherwise "normal consequence of the situation created by [a] scheme," not a more onerous hurdle. *See Schmidt*, 386 F.3d at 244-45; *see also U.S. ex rel. Schieber v. Holy Redeemer Healthcare System, Inc.*, No. CV 19-12675, 2024 WL 1928357, at *4 (D.N.J. Apr. 30, 2024) ("Liability under the FCA may attach to a party that 'assist[s] the filing of a false claim in other ways,' even if the party has not 'reviewed, approved, or received … or participated in the[ ] preparation' of the claim." (*quoting Schmidt*, 386 F.3d at 243)). Thus, so long as a "a person or entity knowingly participates in a scheme that, if successful, would ultimately result in the submission of a false claim to the Government, that person or entity has caused those claims to be submitted." *U.S. ex rel. Ellsworth Assoc., LLP v. CVS Health Corp.*, 660 F. Supp. 3d 381, 405 (E.D. Pa. 2023); *U.S. ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 127 (D.D.C. 2014) ("agree[ing] to take certain critical actions in furtherance of … fraud" is a sufficient basis for liability under the FCA "even where the non-submitting entity [i]s not the prime mover of the alleged fraud").

That is the case here: The SAC plausibly alleges that Amazon affirmatively joined in the scheme, taking an active and critical role at almost every step. *See id.* As alleged in the SAC, Amazon did not merely passively acquiesce to the Co-Conspirators' conduct, but facilitated it, and indeed, enabled it. By affirmatively choosing to warehouse, market, offer for sale, and deliver Co-Conspirators' furs despite knowledge of their fraudulent conduct, SAC ¶¶ 62-63, Amazon not only became a natural home for its Co-Conspirators' fraudulent conduct, but an active participant in it.

The FCA has a broad remedial purpose, and the law does not absolve an entity that repeatedly facilitates false claims, with active knowledge of their falsity, under the smokescreen of "merely providing services." *Cf.* Mot. at 13. To the contrary, continuing a business relationship

with a repeated false claimant is in itself is an affirmative "improper act," *id.* at 14, giving rise to liability under the FCA. *See U.S. v. Pres. and Fellows of Harvard College*, 323 F. Supp. 2d 151, 187 (D. Mass. 2004) ("Where the defendant has an ongoing business relationship with a repeated false claimant, and the defendant knows of the false claims, yet does not cease doing business … , the defendant's ostrich-like behavior itself becomes 'a course of conduct that allowed fraudulent claims to be presented to the federal government.'" (quoting *U.S. ex rel. Long v. SCS Bus. & Tech. Inst.*, 999 F.Supp. 78, 91 (D.D.C. 1998)). Thus, once Amazon became aware of the fraud (as is alleged in the SAC and must be taken by this Court as true), it was no longer "merely providing services," but actively causing false claims to be submitted.

Defendants rely heavily on *U.S. ex rel. Taylor v. GMI USA Corp.*, No. 16-CV-7216 (RWL), 2024 WL 307791, (S.D.N.Y. Jan. 26, 2024), but that case only underscores that Relators' theory of liability is viable. Contrary to Defendants' retelling of the case, the court did not address the specificity of the complaint in response to the defendants' causation arguments. *Compare* Mot. at 14-15 with *Taylor*, 2024 WL 307791, at *6-9. Instead, the *Taylor* court specifically acknowledged that "knowingly passing along false information" could be a basis for liability under the FCA as a substantial factor in causing a false claim to be presented. *Id.* at *7. Although the facts here are not identical to those in *Taylor*, the differences are immaterial, and the underlying principle is the same. By knowingly allowing itself to become a vector for false claims, and taking affirmative acts to make the submission of false claims a viable and profitable business model for its Co-Conspirators, Amazon caused those false claims to occur: They were a foreseeable result of Amazon's actions.

**B.      The SAC Plausibly Alleges that Amazon Knew That the Records Were False or Acted With Deliberate Ignorance or Reckless Disregard to their Falsity**

Defendants further argue that the SAC does not adequately allege that it acted "knowingly." *See* Mot. at 17-22.  Under the False Claims Act, a party acts knowingly where it (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).  Defendants' arguments regarding each of these means of satisfying the "knowingly" element fall short.

1.      *The SAC Plausibly Alleges Circumstantial Evidence of Actual Knowledge*

First, Defendants misconstrue the False Claims Act's knowledge requirement.  They argue that the SAC does not allege "knowledge of false claims that [Amazon] itself submitted."  Mot. at 18.  But the False Claims Act has no such requirement.  Nothing in the statute—including the definition of "knowingly"—requires that the culpable knowledge be of claims Defendants themselves made.  Instead, the statute requires only that Defendants acted "knowingly" with respect to the false information at issue—here, the Co-Conspirators' omitted FWS Forms and false Customs Declarations.  As detailed above and explained in greater detail below, the SAC does this.  *See* SAC ¶¶ 45-65.

Second, Defendants misapply Rule 9(b)'s heightened pleading standard.  That rule specifically provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Courts consistently apply this precept in False Claims Act cases.  *See, e.g.*, *United States ex rel. Kester v. Novartis Pharms. Corp.*, No. 11 CIV. 8196 CM, 2014 WL 2619014, at *4 (S.D.N.Y. June 10, 2014) (noting that in False Claims Act case "[s]center … 'may be alleged generally'" (quoting Fed. R. Civ. P. 9(b)); *United States ex rel.*

*Grabcheski v. Am. Int'l Grp., Inc.*, No. 10 CIV. 03902 (GBD), 2016 WL 9083376, at *3 (S.D.N.Y. Mar. 31, 2016) (same).

Sidestepping this plain reading of Rule 9(b) and settled case law, Defendants instead conflate the heightened pleading standard with respect to the circumstances of the fraud with the requirement to plead scienter. *See* Mot. at 18. But "[a] strong inference of fraudulent intent 'may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27-28 (2d Cir. 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)). The SAC does both of these. First, it alleges fact showing that Defendants had a strong profit motive to commit fraud, *see, e.g.*, SAC ¶ 64, and the opportunity to facilitate Defendants' Co-Conspirators' ongoing pattern of fraud against the United States, *see, e.g.*, *id.* ¶¶ 59-60. Second, the SAC also includes nearly a dozen paragraphs alleging specific facts "constitut[ing] strong circumstantial evidence" of Defendants' reckless disregard for the truth. *See* SAC ¶¶ 45-65. Indeed, even Defendants seem to recognize this, as their motion catalogues the specific allegations. Mot. at 19. Apparently in recognition of the sufficiency of this pleading, Defendants instead factually challenge the SAC's allegations, asserting that Amazon's employees could not have been expected to detect this fraud among the "billions of shipments Amazon handles each year." *Id.* at 19-20. But such factual disputes are not properly raised on a motion to dismiss. *See, e.g.*, *Financial Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 405 (2d Cir. 2015).

The sole case that Defendants cite does not save their argument. In *United States ex rel. Pervez v. Beth Israel Med. Ctr.*, the relator brought a False Claims Act action against Ernst & Young for allegedly allowing a medical center to submit false Medicaid cost reports by falsely

certifying that it had audited the medical center's cost reports.  736 F. Supp. 2d 804, 806 (S.D.N.Y. 2010).  As Judge Kaplan wrote, the complaint in that case "merely makes the sweeping and, so far as the complaint discloses, entirely unfounded assertion that E & Y either must have intentionally assisted [the medical center] in its fraudulent concealment or it must not have done the audits as claimed because if it had done the audits it necessarily would have detected the falsity of the" cost reports.  *Id.* at 814.  Here, by contrast, the SAC contains nearly two dozen specific allegations of facts establishing that Defendants were on notice of their Co-Conspirators' fraudulent conduct and acted to encourage and facilitate that conduct on an ongoing basis.  *See* SAC ¶¶ 45-65.

### 2. *The SAC Plausibly Alleges that Defendants Acted with Deliberate Ignorance and Reckless Disregard for the Truth*

In arguing that the SAC fails to plead deliberate ignorance,[2] Defendants again attempt to move the goal posts beyond what the False Claims Act and case law prescribe and to raise factual disputes prematurely.  First, relying solely on a single pronoun on a tangentially related Supreme Court opinion, Defendants argue that the SAC does "not allege that ***Amazon itself*** made any false statements justifying the application of" the deliberate ignorance standard.  Mot. at 21 (emphases altered).  But the False Claims Act contains no such limitation on the applicability of the deliberate ignorance or reckless disregard standards, which are components of the statutory definition of "knowingly" without regard for whether the information at issue originated from Defendants or, as here, third parties.  *See* 31 U.S.C. § 3729(b)(1).  The Supreme Court's decision in *Schutte* says nothing different.  In that case, the Court considered alleged false claims submitted by defendant pharmacies.  *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 744-45 (2023).  It is

---

[2]  Defendants mis-state this standard as "deliberate indifference" in their motion but appear to be referring to the "deliberate ignorance" aspect of the statutory definition of "knowingly."  *See* Mot. at 21.

thus unsurprising that the Court described the deliberate ignorance standard in the context of those facts, including that the standard applied to "their [the defendants'] statements." *Id.* at 751. Equally unsurprisingly, Defendants cite nothing from the Supreme Court's decision other than this single use of the word "their," as the opinion contains no analysis or language purporting to limit the deliberate ignorance standard as Defendants now argue. *See generally id.* There is no basis for this Court to apply that unduly narrow interpretation of the False Claims Act.

Assessed under the correct standards for "deliberate ignorance" and "reckless disregard," the SAC is more than sufficient. "'Deliberate ignorance' encompasses defendants who are aware of a substantial risk [of falsity], but intentionally avoid taking steps to confirm the statement's truth or falsity." *Id.* at 751. "'[R]eckless disregard' similarly captures defendants who are conscious of a substantial and unjustifiable risk" of falsity but nonetheless proceed. *Id.* It is well established that the "reckless disregard" standard covers those defendants "who failed 'to make such inquiry as would be reasonable and prudent to conduct under the circumstances' [and] ... 'when the actor knows or has reason to know of facts that would lead a reasonable person to realize'" that the information was false. *United States v. King-Vassel*, 728 F.3d 707, 713 (7th Cir. 2013) (quoting S.Rep. No. 99–345, at 20 and Black's Law Dictionary 540–41 (9th ed. 2009)). The SAC alleges precisely that: Defendants knew or, at a minimum, had reason to know, that they were receiving furs that had evaded FWS inspection fees (because they lacked FWS Form 3-177 and entered the United States through non-FWS ports) and customs (because the Customs Declarations misidentified the products and underreported the values and because the furs were being sold at unreasonably low prices) but chose to disregard those facts and instead sell, deliver, and remit payment to the Co-Conspirators for those furs. SAC ¶¶ 45-65.

Other cases in which courts have applied the "reckless disregard" standard confirm this conclusion. For example, in *United States v. Krizek*, the D.C. Circuit affirmed a judgment against a defendant psychiatrist whose wife submitted claims including hours the psychiatrist supposedly worked but "made no effort" to verify that veracity of those claims despite days on which the billed hours "approached twenty-four hours in a single day." 111 F.3d 934, 942 (D.C. Cir. 1997). By contrast, in *United States ex rel. Williams v. Renal Care Grp., Inc.*, the Sixth Circuit found that a defendant did not act with reckless disregard where it "consistently sought clarifications on the issue, followed industry practice in trying to sort through ambiguous regulations, and [was] forthright with government officials." 696 F.3d 518, 531 (6th Cir. 2012). Here, the SAC's allegations map cleanly onto the former and not the latter: Defendants sought no clarifications, performed no due diligence and failed to conduct any inquiry on the veracity of their Co-Conspirators' claims despite indicia (false Customs Declarations, missing FWS forms and impossible low prices) of falsity. These pleadings plausibly allege that Defendants acted in deliberate ignorance and reckless disregard of the truth of the information at issue.

Unable to get around the reckless disregard allegations, Defendants resort to disputing the facts, and argue that their contracts with the Co-Conspirators absolve them of any obligation to inquire into the falsity of the information at issue here. Mot. at 21-22. Defendants cite no case law in support of this argument, because they cannot: "[A] failure to conduct a proper investigation" can constitute reckless disregard under the False Claims Act. *United States v. Raymond & Whitcomb Co.*, 53 F. Supp. 2d 436, 447 (S.D.N.Y. 1999). The extent to which Defendants could have reasonably relied on their Co-Conspirators representations—despite the numerous indicia of falsity—is a fact issue that is not properly resolved on a motion to dismiss.

13

Because the SAC adequately alleges both circumstances establishing that Defendants actually knew of the falsity of the information at issue and acted with deliberate ignorance and reckless disregard as to that falsity, Defendants' motion should be denied.

## C.    The SAC Satisfies the Particularity Requirements of Rule 9(b)

Although it is well accepted that a reverse false claims action, like this one, is subject to the Rule 9(b) pleading standard, that rule "does not require that every qui tam complaint provide details of actual bills or invoices submitted to the government, so long as the relator makes plausible allegations … that lead to a strong inference that specific claims were indeed submitted." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 93 (2d Cir. 2017).  "A relator is not required to identify representative examples of false claims to support every allegation, although the use of representative examples is one means of meeting the pleading obligation."  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th Cir. 2019).

The SAC easily satisfies Rule 9(b).  It alleges that specific third parties—Defendants' Co-Conspirators—imported a single category of products—furs—into the United States and that those furs were marketed, sold and delivered by Defendants.  *See* SAC ¶¶ 10, 32, 35, 60.  The SAC further alleges who made the specific false statements at issue—the identified Co-Conspirators— and how the statements were false—by intentionally omitting  FWS Form 3-177 to evade FWS inspection fees and falsifying Customs Declarations by misidentifying the goods and undervaluing them.  *See id.* ¶¶ 35-44.  The SAC also alleges a time period during which the false statements were made.  *See id.* ¶¶ 67-79.  These particular facts—the who, what, when, where, and how— "lead to a strong inference that specific claims were indeed submitted."  *Chorches*, 865 F.3d at 93. Namely, the furs that were imported into the United States and marketed, sold and delivered by Defendants, necessarily included these false claims as a function of the fact that they entered the United States.  These allegations are sufficient to satisfy the overriding purpose of Rule 9(b): to

14

provide Defendants with fair notice of the claims against them.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Moreover, even though Relators need not "provide details of actual bills or invoices submitted to the government," the SAC does allege numerous specific examples of the false claims at issue here.  *Chorches*, 865 F.3d at 93; *see* SAC ¶¶ 66-77.  The SAC's allegations—buttressed by its specific examples—are sufficient to satisfy Rule 9(b)'s pleading requirements as applicable to False Claims Act cases.

## III.    THE SAC PLAUSIBLY ALLEGES THAT AMAZON KNOWINGLY AND IMPROPERLY AVOIDS OR DECREASES AN OBLIGATION TO PAY MONEY TO THE UNITED STATES

The False Claims Act's establishment of liability for a person who "knowingly and improperly avoids or decreases an obligation to pay" money to the United States is a theory of liability separate and distinct from the statute's prohibition of making or using false records.  31 U.S.C. § 3729(a)(1)(G).  "[T]he 'knowing avoidance' prong of § 3729(a)(1)(G) does not require proof of fraud, and instead applies 'regardless of whether such actions involve a falsehood.'" *United States ex rel. Takemoto v. The Hartford Fin. Servs. Grp., Inc.*, 157 F. Supp. 3d 273, 279 (W.D.N.Y. 2016), aff'd sub nom. *United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92 (2d Cir. 2017) (citing *United States ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 836 n. 16 (7th Cir. 2011)).  Because such a claim "does not require proof of fraud, it is not subject to the particularization requirement of Rule 9(b), which applies only to claims of 'fraud or mistake.'"  *Id.* at 280.

Defendants offer only two arguments against the SAC's allegation that they committed reverse false claims by knowingly and improperly avoiding an obligation to pay money to the United States.  *See* SAC ¶ 84; 31 U.S.C. § 3729(a)(1)(G).  First, Defendants argue that the SAC "fail[s] to even specify the obligations" the Co-Conspirators had to pay to the United States.  Mot. at 17.  But the immediately preceding sentence in Defendants' brief acknowledges that the SAC

15

identifies "tariffs and FWS inspection fees." *Id.* Indeed, the SAC is replete with allegations that the Co-Conspirators had obligations to pay tariffs and FWS inspection fees to the United States but did not pay those obligations. *See, e.g.*, SAC ¶¶ 14-20 (describing FWS obligations); ¶¶ 21-31 (describing tariff obligations); ¶ 34 ("Amazon and its Co-Conspirators have imported tens of thousands of shipments of furs without paying the required WS inspection fees and tariffs …."); ¶ 39 (FWS inspection fees fraudulently avoided); ¶ 44 (tariffs fraudulently reduced). The Co-Conspirators had an "established duty … arising … from statute and regulation" to pay these fees and tariffs upon importing furs into the United States. They therefore satisfy the statutory definition of an "obligation," and this argument fails. *See* 31 U.S.C. § 3729(b)(3); *see also Taylor*, 2024 WL 307791 at *1 (denying motion to dismiss False Claims Act complaint premised on "scheme to misrepresent the tariff classifications and corresponding [Customs] duties owed").

Second, Defendants argue that the SAC does not allege "how Amazon had an obligation that it avoided." Mot. at 17. This misstates the law. The False Claims Act does not establish liability only for a party that avoids its own obligation, but for any party that improperly avoids "*an* obligation." 31 U.S.C. § 3729(a)(1)(G). Federal courts across the country have interpreted this plain statutory language to include liability for parties that improperly avoid obligations owed by others to the United States, precisely as the SAC alleges here. *See, e.g.*, *United States v. Caremark, Inc.*, 634 F.3d 808, 816-17 (5th Cir. 2011) (holding that health care company could be liable for fraudulently decreasing obligations owed by state Medicaid programs to United States); *United States ex rel. Garbe v. Kmart Corp.*, 73 F. Supp. 3d 1002, 1012 (S.D. Ill. 2014) (reverse false claims provision of False Claims Act "does not require that the statement impair *the defendant's* obligation; instead, it requires that the statement impair '*an* obligation to pay or transmit money or property to the government'" (quoting 31 U.S.C. § 3729(a)(1)(G))); *United*

16

*States ex rel. Wallace v. Exactech, Inc.*, No. 2:18-CV-01010-LSC, 2020 WL 4500493, at *21 (N.D. Ala. Aug. 5, 2020) (holding that argument that reverse claims provision is limited to the defendant's obligation "is not supported by the plain language of the statute"); *United States v. The Health Alliance of Greater Cincinnati*, No. 1:03-CV-00167, 2008 WL 5282139, at *15 (S.D. Ohio Dec. 18, 2008) (refusing to construe statutory text of "an obligation" to "the Defendant's independent obligation").

Neither case cited by Defendants in support of this argument changes this result. In *United States ex rel. Wood v. Applied Rsch. Assocs., Inc.*, the district court rejected a reverse false claims suit that alleged that contractors hired by the government had not performed the work for which they had been paid and that those contractors had failed to return that money, even though the government had not demanded or sought to require the return of the money. No. 07 CV 3314 (GBD), 2008 WL 2566728, at *4 (S.D.N.Y. June 26, 2008). The Second Circuit affirmed, noting that the complaint "ma[de] no mention of any financial obligation that the [] Defendants owed to the government." 328 F. App'x 744, 748 (2d Cir. 2009). Similarly, in *United States ex rel. Hussain v. CDM Smith, Inc.*, the court rejected a reverse false claims action based on the failure to repay allegedly fraudulently obtained funds because the relator "d[id] not 'identify any existing financial obligation [that the defendant] owed to the Government.'" No. 14-CV-9107 (JPO), 2017 WL 4326523, at *9 (S.D.N.Y. Sept. 27, 2017). By contrast, the SAC does not depend on any failure to return money paid by the government, but is premised on the Co-Conspirators' fraudulent evasion of their tariff and FWS fee obligations, and Amazon's facilitation of that evasion. This argument therefore fails.

**IV.    THE SAC PLAUSIBLY ALLEGES THAT AMAZON CONSPIRED WITH ITS CO-CONSPIRATORS**

Defendants offer three arguments for the dismissal of the SAC's False Claims Act conspiracy claim, none of which have any merit.

First, Defendants argue that the SAC's conspiracy "allegations are coextensive with those supporting Plaintiffs' flawed reverse false claim cause of action in Count I and thus fail for the same reasons." Mot. at 22. But the SAC's conspiracy claim is not analogous to that in the single case Defendants rely on in which the court dismissed a False Claims Act conspiracy claim that was coextensive with other False Claims Act claims. *See United States ex rel. Donohue v. Carranza*, 1:20-cv-05396 (GHW) (SDA), 2023 WL 2414166, at *9 (S.D.N.Y. Jan. 14, 2023). In *Donohue*, the relator alleged that the defendants, a number of school districts, submitted Medicaid claims for reimbursement for services provided to disabled students and that those claims were false because the services were provided remotely, which were allegedly not authorized by the Medicaid Act. *Id.* at *2. The court ruled that the relator failed to allege that any of the claims submitted were factually or legally false. *Id.* at *7-8. Because the claims at issue were, as a matter of law, not false, no causes of action for either submitting those claims or conspiring to submit them could move forward. *Id.* at *8-9.

Here, by contrast, Defendants' arguments against the reverse false claims cause of action do not implicate the viability of those false claims as a basis for the conspiracy cause of action. Indeed, all but one of Defendants' arguments relate not to whether the SAC plausibly alleges reverse false claims, but to whether Defendants can be held liable for knowingly causing the reverse false claims made by their Co-Conspirators. The remaining argument Defendants make—that the SAC fails to allege any reverse false claims with particularity—is inapplicable to the conspiracy count. "Since no false claim need have been submitted for [False Claims Act

conspiracy] liability to attach, no claim need be identified with particularity." *U.S. ex rel. Kester v. Novartis Pharms. Corp.*, No. 11 CIV. 8196 CM, 2014 WL 2619014, at *10 (S.D.N.Y. June 10, 2014). Because Defendants' arguments against reverse false claims liability do not address their conspiracy liability, this argument should be rejected.

Second, Defendants argue that the "SAC does not allege any agreement between Amazon and the alleged Co-Conspirators." Mot. at 22. But "[a] conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *United States v. Svoboda*, 347 F.3d 471, 477 (2d Cir. 2003). The SAC thoroughly pleads such a tacit understanding: the Co-Conspirators knew that Amazon would market, sell, deliver, and remit payment for their fraudulently imported furs, so they continued sending those furs. For its part, Amazon knew that as long as it continued marketing, selling, delivering, and remitting payment for the furs, its Co-Conspirators would continue manufacturing and distributing them through Amazon's platform, from which Amazon derived significant profit. This course of conduct evinces an agreement between Amazon and its Co-Conspirators that plausibly pleads a False Claims Act conspiracy.

Third, Defendants argue that the SAC does not plausibly allege that Defendants engaged in any overt acts in furtherance of the conspiracy because Defendants only received, sold, shipped, and remitted payment for the fraudulently imported goods after they were fraudulently imported. Mot. at 23. This argument reflects an overly narrow interpretation of conspiracy law and erroneous reading of the SAC's allegations and of the conspiracy between Defendants and the Co-Conspirators. As a matter of law, Defendants' argument that their overt act must have preceded the reverse false claim is unsupported by any case law or logic. Unsurprisingly, Defendants support this argument with only a single out-of-context quotation from a court's description of the

19

facts in another case.  *See* Mot. at 23 (quoting *Taylor*, 2024 WL 307791, at *10).  As a matter of pleading, the SAC does not allege Defendants and their Co-Conspirators conspired separately for each fraudulent import of furs.  Rather, the SAC pleads facts that plausibly allege that Defendants and their Co-Conspirators conspired over a span of years to engage in a pattern of fraudulent imports of furs and the marketing and sale of those furs for profit: each of Defendants' sales of fraudulently imported furs was in furtherance of the next fraudulent import of such furs. Defendants' overt acts in furtherance of this conspiracy were numerous, and the SAC plausibly pleads them.  *See, e.g.*, SAC ¶ 60.

## V.    AMAZON'S ARGUMENT IN A FOOTNOTE REGARDING THE STATUTE OF LIMITATIONS SHOULD BE REJECTED

Lastly, Defendant's argument, in a footnote, that the Court should "dismiss or at least narrow any surviving allegations because of the applicable statute of limitations," should be rejected.  Mot. at 24 n. 11.  First, the Court should reject this argument because Defendants improperly raised it only in a footnote.  *See Steinbeck v. Steinbeck Heritage Found.*, 400 F.App'x 572, 574 (2d Cir. 2010) ("Generally, we deem an argument raised only in a footnote as waived.") Second, the SAC pleads an ongoing fifteen-year-long course of conduct, and neither of the claims in the SAC relates solely to conduct that took place before the limitations period, to the extent that period even applies.  *See* SAC ¶ 1, ¶¶ 66-79 (alleging specific instances within limitations period). Dismissal based on the statute of limitations in such circumstances—especially when that argument is raised in such cursory fashion—is not appropriate.  *See Griffin v. Carnes*, 72 F.4th 16, 21 (2d Cir. 2023) (dismissal is only "appropriate where the complaint's untimeliness is apparent on its face").

## CONCLUSION

For these reasons, the Court should deny Defendants' motion to dismiss the Second Amended Complaint.

Respectfully submitted,

Dated: New York, New York
July 15, 2024

_/s/ Andrew Schapiro_

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Andrew Schapiro
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel.: (212) 849-7000
Fax: (212) 849-7100
andrewschapiro@quinnemanuel.com

Richard Godfrey (_pro hac vice_)
Marissa Medansky (_pro hac vice_)
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Tel.: (312) 705-7400
Fax: (312) 705-7401
richardgodfrey@quinnemanuel.com
marissamedansky@quinnemanuel.com

Robert Zink (_pro hac vice_ forthcoming)
Nicholas Inns (_pro hac vice_)
1300 I Street NW, Suite 900
Washington, DC 20002
Tel: (202) 538-8000
Fax: (202) 538-8100
robertzink@quinnemanuel.com
nicholasinns@quinnemanuel.com

**MORRIS HAYNES LLP**
George L. Beck, Jr. (_pro hac vice_)
Randy Haynes (_pro hac vice_ forthcoming)
Nancy Eady (_pro hac vice_ forthcoming)
131 Main Street (35010), P.O. Box 1660
Alexander City, Alabama 35011
Tel.: (256) 329-2000
Fax: (256) 329-2015
gbeck@mhhlaw.net
rhaynes@mhhlaw.net

21

neady@mhhlaw.net

*Attorneys for Plaintiffs-Relators*